IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRENT BECKWAY,

     Plaintiff,

v.

DEPUTY PAUL DESHONG, et al.,

     Defendants.

NO. C07-5072 TEH

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS; GRANTING DEFENDANT DESHONG'S MOTION FOR LEAVE TO AMEND ANSWER

This matter came before the Court on April 26, 2010, on Defendants' motions for judgment on the pleadings. For the reasons set forth below, Defendants' motions are GRANTED IN PART and DENIED IN PART. The Court also GRANTS Defendant DeShong's motion for leave to amend his answer.

**BACKGROUND**

This lawsuit arises out of the October 27, 2006 arrest of Plaintiff Brent Beckway ("Beckway" or "Plaintiff") by defendants Richard Ward ("Ward") and Paul DeShong ("DeShong"), deputies with the Lake County Sheriff's Department. Beckway contends that the officers seriously injured his left knee through excessive force and arrested him without probable cause. A state court judge found probable cause to hold Beckway over for trial at a preliminary hearing on May 18, 2009, and Beckway pleaded nolo contendere to a charge of resisting arrest on October 27, 2009. At issue on these motions is whether Beckway's claims under 42 U.S.C. § 1983 are barred by determinations made in the criminal proceeding, based on the Supreme Court's decision in *Heck v. Humphrey* and the doctrine of collateral estoppel.

Beckway's arrest resulted from a dispute with his neighbor, Harold Alan Keats, regarding a cord of wood that Beckway purchased from him. Beckway alleges in his complaint that Keats twice visited Beckway's home to demand payment for the wood on October 27, 2006, and that Beckway "encountered" Keats later that day at the local store. Compl. ¶¶ 9-11. According to DeShong's police report,[1] Beckway struck Keats on the left side of his face with a closed fist during their confrontation at the store. Keats – who uses a wheelchair – momentarily stood from the chair and grabbed Beckway's shirt, tearing it. Witnesses interviewed by DeShong characterized Beckway as the aggressor. Beckway also left two phone messages on Keats' answering machine, the first conciliatory, the second threatening.

DeShong, after interviewing Keats and two other witnesses and hearing the telephone messages, contacted Beckway at his home while accompanied by Ward as a cover unit. He found Beckway to be visibly intoxicated and unsteady on his feet. After soliciting Beckway's account of his altercation with Keats, DeShong notified Beckway that he was placing him under arrest. Beckway "pulled away" and "started to spin around, attempting to gain physical advantage," but then "lost his balance and fell to the deck of the residence." Preston Decl., Ex. A at 3. Beckway, having fallen forward, had his hands and arms beneath his torso; the officers attempted to gain control of his hands and soon placed him in handcuffs. As the officers helped him up, Beckway complained of a pain to his left leg, and

---

[1] Defendants request judicial notice of documents from the criminal proceeding against Beckway in Lake County Superior Court, including a transcript of the preliminary hearing and police reports on which the judge relied as the factual basis for Beckway's plea. The Court may consider, on a motion for judgment on the pleadings, the facts alleged in the pleadings as well as those contained in judicially noticed materials. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999). Pursuant to Federal Rule of Evidence 201, the Court will take judicial notice of the *existence* of these documents as "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Since it would be inappropriate to "take judicial notice of a fact that is 'subject to reasonable dispute,'" *id.* (quoting Fed. R. Evid. 201(b)), the Court does not accept as true the facts alleged in the documents. As Defendants' motions are based on issues litigated in the criminal proceeding, the Court sets out the facts alleged by Plaintiff and in the judicially noticed documents to establish the context for that litigation. However, the Court makes no judgment as to the veracity of any account, and – where facts are material to the resolution of this motion – resolves all doubts in favor of Plaintiff.

1  was transported by medical personnel to a hospital for treatment.  Beckway alleges in his
2  complaint that the officers had forcibly thrown him to the ground and stomped on the back of
3  his left knee, causing his injury.

4        Beckway was charged with elder abuse, Cal. Pen. Code § 368, making criminal
5  threats, *id.* § 422, and resisting arrest, *id.* § 148(a)(1), in a criminal complaint filed on
6  September 20, 2007.  A preliminary hearing on the criminal charges was held over five days
7  spanning eight months, starting on September 26, 2008, and concluding on May 18, 2009.
8  Observing that the "Court only needs to find probable cause, a strong suspicion standard for
9  purposes of preliminary hearing," Superior Court Judge Richard Martin found "sufficient
10 evidence" to sustain a misdemeanor charge of making criminal threats, "but not to the
11 standard of a felony."  Preston Decl., Ex. C at 261-62.  As to the other charges, Judge Martin
12 noted that he "need not make any finding . . . for purposes of a prelim," yet concluded that
13 "there was sufficient evidence heard during the course of the presentation to satisfy the Court
14 that they were appropriately charged."  *Id.* at 262.  Turning to "the officer[s'] conduct," the
15 court observed that they "clearly announce that they need to arrest" – as Beckway's "story is
16 inconsistent with" other witnesses' accounts – and found that "they appear at that point to at
17 least have probable cause to effect an arrest."  *Id.* at 263.

18       Beckway entered a plea of nolo contendere, or "no contest," to the misdemeanor
19 charge of resisting arrest on October 27, 2009.  The plea form he signed explained that a nolo
20 contendere plea "will have exactly the same effect in this case as a plea of guilty," but
21 "cannot be used against me in a civil lawsuit unless the offense is punishable as a felony."
22 Preston Decl., Ex. E.  At the hearing, Beckway's counsel stated that he would "not be
23 stipulating to a factual basis for the plea," but had "no objection to the Court making its own
24 finding based upon the preliminary hearing."  *Id.*, Ex. F at 3.  As a "factual basis" for the
25 plea, Judge Martin stated that he would rely on a September 25, 2007 warrant that he had
26 signed as well as "53 pages of police reports attached in support of the affidavit for the
27 warrant."  *Id.*
28

3

Beckway filed this action on October 2, 2007 against DeShong, Lake County, the Lake County Sheriff's Department, Sheriff Rodney Mitchell, and Ward ("Defendants").[2] He brings claims for excessive use of force and false arrest under 42 U.S.C. § 1983, as well as state law claims for battery, negligence, and intentional infliction of emotional distress. Two motions for judgment on the pleadings – one by DeShong, and the other by Ward and the remaining Defendants – were filed on February 24, 2010 and are now before the Court.

**LEGAL STANDARD**

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally identical." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The Court must "accept all material allegations in the complaint as true," and resolve all doubts "in the light most favorable to the plaintiff." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). A court may also consider, on a Rule 12(c) motion, "facts that 'are contained in materials of which the court may take judicial notice.'" *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (quoting *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

**DISCUSSION**

Defendants, in both motions, argue that Beckway's action is preempted on two grounds. They first contend that the Supreme Court's ruling in *Heck v. Humphrey* bars his § 1983 claim for excessive force, as that claim implies the invalidity of his conviction for

---

[2] Ward appeared only as a Doe Defendant in the original complaint, and was added by name in an amendment to the complaint filed on February 1, 2008.

4

resisting arrest. Defendants further argue that the state court judge's finding of probable cause to hold Beckway over for trial collaterally estops his false arrest claim. The Court addresses these arguments in turn.

## I. *Heck v. Humphrey*

In *Heck v. Humphrey*, the Supreme Court limited a plaintiff's ability to bring a § 1983 action that calls into question the lawfulness of a criminal conviction. The petitioner in *Heck* had filed – while the appeal of his conviction for voluntary manslaughter was pending – a § 1983 suit alleging illegal conduct in his prosecution for that charge. Before the Court was the question of "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." 512 U.S. 477, 478 (1994). The Court held that, "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. A damages claim "bearing that relationship to a conviction" that "has not been so invalidated is not cognizable under § 1983." *Id.* at 487.

In a concurrence joined by three other justices, however, Justice Souter sought to prevent the Court's ruling from being interpreted "to shut off federal courts altogether to claims that fall within the plain language of § 1983." *Id.* at 501 (Souter, J., concurring). The Court's decision, he observed, required "a state prisoner challenging the lawfulness of his confinement to follow habeas's rules before seeking § 1983 damages for unlawful confinement in federal court," a holding that "neatly resolve[d] a problem that ha[d] bedeviled lower courts." *Id.* at 498. Justice Souter cautioned, however, that the Court's opinion could also be read to "needlessly place at risk the rights of those . . . not 'in custody' for habeas purposes." *Id.* at 500.

5

> If these individuals (people who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences), like state prisoners, were required to show the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment, the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling. The reason, of course, is that individuals not "in custody" cannot invoke federal habeas jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights. That would be an untoward result.

*Id.* at 500. Justice Souter therefore read the *Heck* holding as applying only to "prison inmates seeking § 1983 damages in federal court for unconstitutional conviction or confinement." *Id.*

A majority of justices subscribed to Justice Souter's view in *Spencer v. Kemna*, 523 U.S. 1 (1998). Justice Souter's concurring opinion, joined now by Justices O'Connor, Ginsburg, and Breyer – and endorsed in a dissent by Justice Stevens – reiterated his concern that *Heck* could be interpreted to place "a given claim for relief from unconstitutional injury . . . beyond the scope of § 1983 if brought by a convict free of custody." *Spencer*, 523 U.S. at 20-21 (Souter, J., concurring); *see also id.* at 25 (Stevens, J., dissenting) ("Given the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under § 1983."). "The better view, then, is that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at 21 (Souter, J., concurring).

*Heck* requires district courts to dismiss a complaint "when a state prisoner seeks damages in a § 1983 suit" and "a judgment in favor of the plaintiff would necessarily imply the invalidity of [a] conviction or sentence" that has not "already been invalidated." *Heck*, 512 U.S. at 487. Defendants, relying on that mandate, urge this Court to dismiss Beckway's § 1983 excessive force claim because it is incompatible with his plea for resisting arrest,

6

which Beckway never alleges was in any way overturned.[3] Beckway argues that dismissal would be inappropriate, for two reasons. Given that he is not in custody and therefore cannot bring a habeas action, he contends that his claim falls within the broad exception to *Heck* carved out by Justice Souter. Beckway also argues that a ruling in his favor on the excessive force claim is not necessarily incompatible with his plea for resisting arrest, because the use of excessive force occurred *after* he was effectively placed under arrest.

Beckway's nolo contendere plea to the resisting arrest charge brings his excessive force claim within the realm of *Heck*. Beckway pled to a violation of section 148(a) of the California Penal Code, which applies to one who "willfully resists, delays, or obstructs any . . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment." A violation of section 148(a) is comprised of three elements: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *People v. Simons*, 42 Cal. App. 4th 1100, 1108-09 (1996). Section 148(a) can only be violated where "the officer at the time of the offense [is] engaged in the *lawful* performance of his duties." *People v. Wilkins*, 14 Cal. App. 4th 761, 776 (1993) (emphasis added). An arrest made with excessive force cannot be lawful, because "a police officer is not permitted to use unreasonable or excessive force in making an otherwise lawful arrest." *People v. Olguin*, 119 Cal. App. 3d 39, 46 (1981). Therefore, to the extent that Beckway alleges excessive force in effecting his arrest, his claim is incompatible with his conviction under section 148(a).[4]

---

[3] The nolo contendere plea "shall be considered the same as a plea of guilty" and, upon that plea, "the court shall find the defendant guilty." Cal. Pen. Code § 1016(3). The nolo contendere plea is the equivalent of a conviction for purposes of *Heck*. *See Nuno v. County of San Bernardino*, 58 F. Supp. 2d 1127, 1135 (C.D. Cal. 1999).

[4] Beckway contends, in opposition to Defendants' motions, that the use of excessive force occurred *after* his arrest, in which case his excessive force claim would not necessarily impugn his conviction for resisting arrest. *See Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005). Since the Court ultimately concludes that *Heck* is inapplicable for other reasons, there is no need to assess the factual basis for Beckway's nolo contendere plea.

7

However, it is undisputed that Beckway is not currently in custody, and that habeas corpus is not an available avenue of relief. If this Court were to apply the *Heck* rule to bar his § 1983 excessive force claim, "the result would be to deny any federal forum for claiming a deprivation of federal rights" unless he can first "obtain a favorable state ruling." *Heck*, 512 U.S. at 500 (Souter, J., concurring). This is, in other words, precisely the scenario that Justice Souter – and a majority of the Supreme Court – considered untenable.

The Ninth Circuit followed Justice Souter's understanding of *Heck* in *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002), when it addressed a state inmate's claims that prison officials had violated his constitutional rights by miscalculating his prison sentence and revoking good-time credits in a disciplinary proceeding. After observing that Nonnette's case paralleled both *Heck* and *Edwards v. Balisok*, 520 U.S. 641 (1997) (applying *Heck* "to a state prisoner who was seeking damages for unconstitutional deprivation of good-time credits," *Nonnette*, 316 F.3d at 875), the Ninth Circuit nonetheless declined to find that *Heck* precluded his § 1983 claim. The key distinction was that Nonnette had been "released from the incarceration of which he complains," meaning a petition for writ of habeas corpus "would present no case or controversy" and would be dismissed. *Nonnette*, 316 F.3d at 875. The court therefore had to address whether "the unavailability of a remedy in habeas corpus because of mootness permit[s a plaintiff] to maintain a § 1983 action for damages, even though success in that action would imply the invalidity of" the underlying disciplinary proceeding. *Id.* at 876.

The Ninth Circuit relied on "the discussions in *Spencer*" to "conclude that *Heck* does not control." *Id.* at 877 n.5. In so ruling, the court emphasized that its holding "affects only former prisoners challenging loss of good-time credits, revocation of parole or similar matters; the status of prisoners challenging their underlying convictions or sentences does not change upon release, because they continue to be able to petition for a writ of habeas corpus." *Id.* at 878 n.7. Defendants highlight that language to argue that *Nonnette* is inapplicable, since Beckway is not a "former prisoner[] challenging loss of good-time credits." Defendants read that statement too narrowly. The Ninth Circuit was distinguishing

8

claims that ex-prisoners can continue to assert on habeas once they are released from claims that a prisoner's release renders moot; *Nonnette* applies only to the latter, because habeas remains available to the former.  Since Beckway was never incarcerated, habeas is unavailable to him, and his circumstances fit within *Nonnette*.  Indeed, Justice Souter's concurrence in *Heck* – which *Nonnette* follows – explicitly recognizes "people who were merely fined," or "who have completed short terms of . . . probation," among those to whom *Heck*'s holding does not apply.  *Heck*, 512 U.S. at 500 (Souter, J., concurring).

Both sides also dispute the significance of *Guerrero v. Gates*, in which the Ninth Circuit cited *Spencer* and *Nonnette* in acknowledging that "exceptions to Heck's bar for plaintiffs no longer in custody may exist." *Guerrero v. Gates*, 442 F.3d 697, 704 (9th Cir. 2006).  However, the court concluded that "any such exceptions would not apply here," because the plaintiff's "failure timely to achieve habeas relief [was] self-imposed," as he waited nearly three years from his arrest and incarceration before challenging them.  *Id.* at 705.  *Nonnette*, to the contrary, "was founded on the unfairness of barring a plaintiff's potentially legitimate constitutional claims when the individual immediately pursued relief after the incident giving rise to those claims and could not seek habeas relief only because of the shortness of his prison sentence." *Id.*  Here, Beckway's inability to seek habeas relief is not self-imposed; as he was subject merely to a fine and a brief period of probation, habeas was not a plausible avenue for relief.  Although the instant motions come three-and-a-half years after Beckway's arrest, he only pled to the resisting arrest charge six months ago, and this action has been pending for three years.  *Guerrero*, like *Nonnette*, counsels against the application of *Heck* under Beckway's circumstances.

Since habeas relief was unavailable to Beckway through no fault of his own, *Heck* is inapplicable, and his § 1983 claim for excessive force survives.  Defendants' motions for judgment on the pleadings on that basis are therefore DENIED.

//

//

9

## II. Collateral Estoppel

In addition to alleging the officers' use of excessive force, Plaintiff also brings a § 1983 claim for false arrest. "To prevail on his § 1983 claim for false arrest and imprisonment," Beckway must "demonstrate that there was no probable cause to arrest him." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). Defendants argue that the probable cause question was already decided against Beckway in a preliminary hearing in state court, and that he is therefore precluded from litigating this issue. Beckway responds that collateral estoppel is inapplicable because the issue decided at the preliminary hearing was distinct from the issue in his § 1983 claim, and was neither actually litigated nor necessarily decided.

The collateral estoppel doctrine establishes that, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). In *Allen v. McCurry*, the Supreme Court allowed collateral estoppel to be invoked against a § 1983 claimant to bar the relitigation of issues decided in his state criminal trial despite the unavailability of federal habeas corpus relief. 449 U.S. 90, 105 (1980). The respondent, after being convicted of drug possession and assault charges, brought a § 1983 action alleging constitutional violations by officers who had seized drugs in his home. However, the state court had already decided the constitutional questions in a suppression hearing before his criminal trial, and the district court held that collateral estoppel barred the relitigation of that issue. Although the Court of Appeals reversed – concluding that the § 1983 suit was the plaintiff's "only route to a federal forum for his constitutional claim" since habeas was unavailable – the Supreme Court found the application of collateral estoppel permissible. *Id.* at 93-94, 105. "There is . . . no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all." *Id.* at 104.

Defendants urge the Court to apply collateral estoppel based on the findings of the state superior court judge in the preliminary hearing for Beckway's criminal prosecution. "State law governs the application of collateral estoppel or issue preclusion to a state court judgment in a federal civil rights action." *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990). California courts impose five "threshold requirements" for collateral estoppel: "1) the issue to be precluded must be identical to that decided in the prior proceeding; 2) the issue must have been actually litigated at that time; 3) the issue must have been necessarily decided; 4) the decision in the prior proceeding must be final and on the merits; and 5) the party against whom preclusion is sought must be in privity with the party to the former proceeding." *People v. Garcia*, 39 Cal. 4th 1070, 1077 (2006).

The Ninth Circuit and the California Court of Appeals have both affirmed trial courts' decisions to preclude § 1983 claimants from relitigating probable cause determinations made in the preliminary hearing of a related criminal matter. In *Haupt v. Dillard*, the Ninth Circuit affirmed a district court's grant of summary judgment to the defendants in a § 1983 action based on its conclusion "that probable cause to arrest [the plaintiff] had been conclusively determined during his state criminal prosecution." 17 F.3d 285, 288 (9th Cir. 1994). The plaintiff objected that probable cause for arrest is a distinct determination from the probable cause determination at a preliminary hearing, an argument that the court acknowledged could have merit. "[T]he issues are different only in the sense that probable cause for his arrest involves reference to the evidence that was or should have been presented to the magistrate, while probable cause to bind [him] over involves reference to the evidence available to the court at the preliminary hearing." *Id.* at 289. While recognizing that this "difference may be significant in some cases," the Ninth Circuit found no such significance in the case before it, as the plaintiff had adverted to "no evidence adduced at his preliminary hearing that was not available to the defendant officers when they obtained his arrest warrant." *Id.*

The California Court of Appeal's Fourth Appellate District endorsed *Haupt* in *McCutchen v. City of Montclair*, 73 Cal. App. 4th 1138 (1999). At issue was whether the plaintiff's civil suit was collaterally estopped by a magistrate's ruling in his criminal

11

prosecution that there was probable cause to hold him over for trial. Finding *Haupt* to be "well reasoned and supported by California law," the court decided to "follow the Ninth Circuit" and hold that "a prior judicial determination at a preliminary hearing that there was sufficient evidence to hold the plaintiff over for trial may, in some situations, preclude the plaintiff from relitigating the issue of probable cause to arrest in a subsequent civil suit." *Id.* at 1145, 1147. Like the Ninth Circuit in *Haupt*, the *McCutchen* court recognized the possibility that "a ruling on sufficiency of the evidence at a preliminary hearing" may not "meet the identity of the issues requirement." *Id.* at 1146. The Fourth District followed the Ninth Circuit in requiring "a showing that evidence not available to the arresting officer was presented at the preliminary hearing" in order to defeat collateral estoppel. *Id.* Since "the evidence presented at the preliminary hearing was not the same as the evidence available" at the time of arrest, the court found that collateral estoppel did not bar relitigation of the probable cause issue. *Id.* at 1147-48.

However, a more recent decision by California's Sixth Appellate District questioned "the soundness of the narrow holding of *McCutchen*." *Schmidlin v. City of Palo Alto*, 157 Cal. App. 4th 728, 767 (2007). "[W]e do not believe a preliminary hearing either raises the issue of, or provides an adequate opportunity to litigate, the legality of an arrest." *Id.* The *Schmidlin* court disagreed with both *Haupt* and *McCutchen*, finding that the "issue of 'probable cause' to arrest (or sufficient cause to detain) is simply not the same as – let alone identical to – that of sufficient cause to hold the defendant for trial." *Id.* Observing that a "magistrate presiding over a preliminary hearing" has only "limited factfinding powers," the court also concluded that a defendant cannot "'actually litigate' the issue so as to give the magistrate's ruling preclusive effect in a later civil suit." *Id.* at 768.

Beckway urges the Court to follow *Schmidlin* rather than *Haupt* and *McCutchen*. However, the *Schmidlin* court's critique of *Haupt* and *McCutchen* appeared only in dicta: the Sixth District was examining collateral estoppel in the context of an order denying a motion to suppress evidence, not a preliminary hearing. *Schmidlin*, 157 Cal. App. 4th at 768. The court's observations about the collateral estoppel effects of preliminary hearings were

12

therefore irrelevant to the question before it, and are also – as explained further below – unconvincing.

Beckway argues that three of the five required elements of collateral estoppel – that (1) identical issues were (2) actually litigated and (3) necessarily decided – are lacking here. An issue raised by Beckway's § 1983 false arrest claim is whether the officers had probable cause to arrest him. "Probable cause exists where 'the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Safford Unified Sch. Dist. # 1 v. Redding*, --- U.S. ----, 129 S. Ct. 2633, 2639 (2009) (internal citations omitted). At a preliminary hearing, the "magistrate's role is limited to determining whether a reasonable person could harbor a strong suspicion of the defendant's guilt." *Cooley v. Superior Court*, 29 Cal. 4th 228, 251-52 (2002). Although Beckway and the *Schmidlin* court both insist that the probable cause inquiries made by the arresting officer and the state court are distinct, this Court – like *Haupt* and *McCutchen* – does not see how. In both contexts, a reasonable person standard is applied to determine whether evidence is sufficient to suspect one's guilt in committing an offense. The only potential difference is the evidence available to make that determination, a difference that *Haupt* and *McCutchen* both recognize and accommodate. This Court will therefore follow *Haupt* and *McCutchen*, and not *Schmidlin*, on this issue.

Beckway does not show that any evidence relied upon by Judge Martin at the preliminary hearing was unavailable to the officers in making the probable cause determination. The judge concluded that "there was sufficient evidence heard during the course of the presentation to satisfy the Court that [the criminal counts] were appropriately charged." Preston Decl., Ex. C at 262. Absent any demonstration that the judge was relying on information that the officers did not have, this issue is identical to that of probable cause to arrest. Judge Martin then went on to expressly find that the officers appeared to have had "probable cause to effect an arrest." *Id.* at 263. The identity of issues element is therefore satisfied.

13

1    Beckway also contends that he was denied the opportunity to actually litigate the
2 issue, because DeShong – who conducted the investigation preceding his arrest – did not
3 appear at the preliminary hearing. Beckway's counsel made a motion to examine DeShong
4 at the hearing, which was denied. The court relied instead on the testimony of Ward, who
5 repeatedly observed that it was DeShong who investigated the episode and made the
6 probable cause determination. For example, when asked on cross-examination whether
7 Beckway's statements immediately before his arrest "added to the probable cause or a reason
8 to arrest him," Ward responded, "It wasn't my investigation. So you're asking me questions
9 that I don't really have the answers to because I didn't effect the arrest essentially." Preston
10 Dec., Ex. C at 173. In characterizing his role that evening, Ward said, "I was assisting
11 [DeShong] as a cover officer. He outlined the brief circumstances regarding the detail he had
12 responded to, told me he had probable cause to arrest Brent Beckway." *Id.* at 143. Beckway
13 therefore argues that he was unable to explore the reasonableness of DeShong's underlying
14 probable cause determination.

15    "An issue is actually litigated when it is properly raised, by the pleadings or
16 otherwise, and is submitted for determination, and is determined." *People v. Carter*, 36 Cal.
17 4th 1215, 1240 (2005) (internal citations and quotation marks omitted). The issue of
18 probable cause was clearly raised and determined at the preliminary hearing; indeed, it was
19 the very purpose for the hearing. Judge Martin considered and denied the motion to examine
20 DeShong because Beckway's counsel, on an offer of proof, provided only "speculation" that
21 DeShong's version of events would be inconsistent with that relayed by Ward. Preston Dec.,
22 Ex. C at 225. The record demonstrates that Beckway actually litigated the probable cause
23 question. The fact that the court did not allow the examination of DeShong does not nullify
24 the five days of hearings held to determine the probable cause issue. The actual litigation
25 requirement is satisfied.

26    Beckway argued for the first time at hearing that probable cause was not "necessarily
27 decided" at the preliminary hearing. The probable cause determination at a preliminary
28 hearing is "necessary to the judgment" because "the sole purpose of the preliminary hearing

14

1  [is] to determine whether [the defendant] should have been bound over for trial." *Haupt v.*
2  *Dillard*, 17 F.3d 285, 289 (9th Cir. 1994). However, Beckway stresses that the preliminary
3  hearing's purpose is limited to establishing whether there is "probable cause to believe that
4  the defendant has committed a *felony*." Cal. Pen. Code § 866(b) (emphasis added). The only
5  felony charge brought against Beckway was for criminal threats, an offense punishable as a
6  felony or a misdemeanor. *Id.* § 422. Such offenses are known "[i]n the jargon of the
7  criminal law" as "wobblers," and may be reduced from felony to misdemeanor in the
8  discretion of the judge presiding over a preliminary hearing. *People v. Municipal Court*
9  *(Kong)*, 122 Cal. App. 3d 176, 179 n.3 (1981); Cal. Pen. Code § 17(b)(5).

10  Judge Martin concluded that the evidence of Beckway's threats, although insufficient
11  to meet "the standard of a felony," supported a misdemeanor charge. Preston Decl., Ex. C at
12  262. Beckway insists that probable cause for a misdemeanor was not "necessarily decided"
13  because the judge could have ended his inquiry after rejecting the felony charge. However,
14  reducing the charge to a misdemeanor does not change the substance of the offense – it
15  merely alters how that offense may be punished. Cal. Pen. Code § 17. The preliminary
16  hearing was held to determine if the criminal threats charge was supported by probable
17  cause, and Judge Martin concluded that it was. That he also exercised his discretion in
18  reducing the charge does not mean, as Beckway argues, that the probable cause question was
19  not necessarily decided. It was.

20  Plaintiff does not dispute the presence of the last two elements of collateral estoppel.
21  "A finding of probable cause to hold the defendant over for trial is a final judgment on the
22  merits for the purposes of collateral estoppel under the California law because the accused
23  can (1) immediately appeal the determination by filing a motion to set aside the preliminary
24  hearing (Pen. Code, § 995) and (2) obtain review of the decision on the motion to set aside
25  the preliminary hearing by filing a writ of prohibition (Pen. Code, § 999a)." *McCutchen v.*
26  *City of Montclair*, 73 Cal. App. 4th 1138, 1145-46 (1999). Finally, there is privity because
27  Beckway appeared in both actions, as the defendant in the criminal proceeding, and as the
28  plaintiff in the present action.

15

1 Finally, Beckway argues that, since Defendants failed to raise collateral estoppel as an
2 affirmative defense in their answers, they have waived the defense altogether.  The
3 possibility of collateral estoppel only arose after the preliminary hearing in the criminal
4 matter had concluded, long after Defendants had filed their answers.  When a preclusion
5 defense "arises after the pleadings have been filed," it "can be raised only by a motion for
6 leave to file a supplemental answer under" Rule 15(d) of the Federal Rules of Civil
7 Procedure.  *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir. 1984).  Even if no
8 such motion is formally made, however, an "attempt to raise the defense" may be "liberally
9 treated" as a motion for leave to file a supplemental answer.  *Id.*  In response to Beckway's
10 waiver argument, DeShong moved for leave to amend his answer to raise the collateral
11 estoppel defense, noticing it for hearing on May 17, 2010.  Beckway has not opposed the
12 motion, and the deadline for filing an opposition has passed.  *See* Civ. L. Rule 7-3.  The
13 Court therefore GRANTS DeShong's motion to amend his answer, and VACATES the May
14 17, 2010 hearing.  The Court will also liberally construe the remaining Defendants'
15 invocation of the collateral estoppel defense as a motion for leave to amend their answer,
16 which the Court hereby GRANTS.  Defendants' failure to raise collateral estoppel as an
17 affirmative defense in their original answers therefore does not bar the assertion of the
18 defense on these motions.

19 The requirements for collateral estoppel on the question of probable cause are
20 satisfied.  Since this Court is bound by the state court's finding of probable cause, and the
21 presence of probable cause defeats a false arrest claim, judgment on the pleadings is
22 GRANTED to Defendants on that cause of action, and the false arrest claim is DISMISSED
23 with prejudice.

### III. State Law Claims

26 Defendants argue that Beckway's state law claims for battery, negligence, and
27 intentional infliction of emotional distress should be dismissed on two grounds.  First, they
28 contend that the state law claims, like the excessive force claim, imply the invalidity of

16

Beckway's conviction and therefore must be dismissed under *Heck*. They further argue that, if summary judgment were granted as to the § 1983 claims, the Court should decline to exercise jurisdiction over the remaining state law claims. Since the Court denied Defendants' motion as to *Heck* and the excessive force claim survives, the arguments as to the state law claims are moot, and those causes of action survive.

**CONCLUSION**

For the reasons set forth above, Defendants' motions for judgment on the pleadings are GRANTED IN PART and DENIED IN PART. Plaintiff's false arrest claim is DISMISSED with prejudice, and the excessive force and state law claims survive. Defendant DeShong's motion to amend his answer is GRANTED, and the May 17, 2010 hearing is VACATED.

IT IS FURTHER ORDERED that the parties shall appear for a case management conference on **Monday, June 21, 2010, at 1:30pm**. The parties shall file a joint case management statement no fewer than seven days prior to the conference.

**IT IS SO ORDERED.**

Dated:  5/12/2010

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT