IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRENT BECKWAY,

    Plaintiff,

  v.

DEPUTY PAUL DESHONG, et al.,

    Defendants.

NO. C07-5072 TEH

<u>ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTIONS
FOR RECONSIDERATION</u>

   This matter is before the Court on two motions for reconsideration, the first filed by Defendant Deputy Paul DeShong ("DeShong"), and the second by Defendants Deputy Richard Ward ("Ward"), Sheriff Rodney Mitchell, County of Lake, and County of Lake Sheriff's Department (collectively, "Defendants"). Defendants ask the Court to reconsider its May 12, 2010 Order Granting in Part and Denying in Part Defendants' Motions for Judgment on the Pleadings (Doc. 89) ("May 12, 2010 Order"), in particular the Court's conclusion that Plaintiff Brent Beckway ("Beckway") is not currently in custody for purposes of habeas corpus. For good cause appearing, Defendants' motions are GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

   A detailed factual and procedural background of this case is set out in the Court's May 12, 2010 Order, and will not be repeated here. In summary, Beckway's lawsuit arises out of his October 27, 2006 arrest by Ward and DeShong, deputies with the County of Lake Sheriff's Department, for striking and threatening his neighbor following a dispute over the sale of a cord of wood. Beckway pleaded nolo contendere to a charge of resisting arrest (Cal. Pen. Code § 148(a)(1)) on October 27, 2009, and was sentenced to "one year summary probation," with the "conditions that [he] obey all laws, commit no same or similar offenses

1 and that he pay a fine in the amount of $160[.]" Preston Decl. (Doc. 72), Ex. F at 6:9-15.
2 Beckway was also required to "[n]otify the Court of any changes in mailing address, physical
3 address or telephone number," and to "[f]ollow all orders of the Court." *Id.*, Ex. G at 3.
4 Beckway filed this lawsuit on October 2, 2007, bringing claims for excessive use of force
5 and false arrest under 42 U.S.C. § 1983, as well as state law claims for battery, negligence,
6 and intentional infliction of emotional distress.[1] He alleges that Ward and DeShong applied
7 excessive force and seriously injured his left knee.

8   In *Heck v. Humphrey*, the Supreme Court barred a § 1983 plaintiff from recovering
9 damages for "harm caused by actions whose unlawfulness would render a conviction or
10 sentence invalid," unless the plaintiff has proven that the conviction has been reversed,
11 expunged, or otherwise declared invalid or called into question. 512 U.S. 477, 486-87
12 (1994). Defendants, in their motions for judgment on the pleadings, urged the Court to apply
13 the *Heck* rule to bar Beckway's excessive force claim, because the use of excessive force by
14 an officer would necessarily preclude a section 148 conviction.[2] In opposition, Beckway
15 asserted two bases for the Court to find *Heck* inapplicable.

16   First, he invoked the exception to the *Heck* rule carved out by Justice Souter in his
17 concurrence to *Heck*, 512 U.S. at 491, which a majority of justices later endorsed in *Spencer*
18 *v. Kemna*, 523 U.S. 1, 20-21 (1998) (Souter, J., concurring), *id.* at 25 n.8 (Stevens, J.,
19 dissenting). According to Justice Souter, *Heck* should not bar the § 1983 claims of a plaintiff
20 who is not "in custody" and cannot therefore "invoke federal habeas jurisdiction, the only
21 statutory mechanism besides § 1983 by which individuals may sue state officials in federal
22 court for violating federal rights." *Heck*, 512 U.S. at 500 (Souter, J., concurring). Beckway
23 asserted that he was not in custody and therefore could not seek habeas relief, a position
24 Defendants – in reply – did not dispute. After observing that "it is undisputed that Beckway

---

25  [1] This Court dismissed the false arrest claim based on collateral estoppel in its May
26 12, 2010 Order, a ruling that is not at issue on these motions.

27  [2] The nolo contendere plea "shall be considered the same as a plea of guilty" and, upon that plea, "the court shall find the defendant guilty." Cal. Pen. Code § 1016(3). The nolo contendere plea is the equivalent of a conviction for purposes of *Heck*. *See Nuno v.*
28 *County of San Bernardino*, 58 F. Supp. 2d 1127, 1135 (C.D. Cal. 1999).

2

United States District Court
For the Northern District of California

is not currently in custody, and that habeas corpus is not an available avenue of relief," this Court followed Justice Souter's rationale in concluding that the *Heck* bar was inapplicable here. May 12, 2010 Order at 8-9.

Beckway's second argument relied on the Ninth Circuit's holding in *Smith v. City of Hemet* that an action is not barred by *Heck* where "the excessive force may have been employed against [the plaintiff] subsequent to the time he engaged in the conduct that constituted the basis for his conviction." 394 F.3d 689, 693 (9th Cir. 2005). Beckway argued that the excessive force underlying his claim – the stomping on his knee by one of the two deputies – occurred after his arrest had been effected, in which case his claim would not be inconsistent with his conviction. Since the Court had already found *Heck* to be inapplicable based on Beckway's first argument, however, it concluded that it did not need to rule on this second ground.

Defendants now challenge this Court's ruling on Beckway's first argument. Defendants had presented evidence that, on October 27, 2009, Beckway was sentenced to one year of summary probation. In reliance on that evidence, Defendants now argue – for the first time – that habeas was (and remains) available to Beckway: as his probation term does not expire until October 27, 2010, Defendants contend that Beckway is currently "in custody" for habeas purposes. Since the Court did not previously consider the material fact of Beckway's summary probation, the Court granted Defendants leave to file the motions for reconsideration that are now before the Court.

**LEGAL STANDARD**

Rule 54(b) of the Federal Rules of Civil Procedure allows "any order or other decision" that does not end an action to "be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Under the local rules of this district, one basis for allowing leave to file a motion for reconsideration is the showing of a "manifest failure by the Court to consider material facts or dispositive legal arguments" previously presented to the Court. Civ. L. R. 7-9(b)(3). The Court previously

3

1 granted Defendants leave to file the instant motions based on its failure to consider the
2 material fact of Beckway's probation term. *See* Order Granting Leave to File Motions for
3 Reconsideration (Doc. 100) at 2.

4 Since Defendants ask the Court to reconsider a ruling on motions for judgment on the
5 pleadings, the Court must continue to apply the standard governing such motions. "After the
6 pleadings are closed – but early enough not to delay trial – a party may move for judgment
7 on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the
8 moving party clearly establishes on the face of the pleadings that no material issue of fact
9 remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach*
10 *Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "[T]he same
11 standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog,"
12 because the motions are "functionally identical." *Dworkin v. Hustler Magazine, Inc.*, 867
13 F.2d 1188, 1192 (9th Cir. 1989). The Court must "accept all material allegations in the
14 complaint as true," and resolve all doubts "in the light most favorable to the plaintiff."
15 *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). A court may also
16 consider, on a Rule 12(c) motion, "facts that 'are contained in materials of which the court
17 may take judicial notice.'" *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18
18 (9th Cir. 1999) (quoting *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

19

20 **DISCUSSION**

21 The Court begins by considering whether habeas is available to Beckway because he
22 is in custody by virtue of his summary probation. If habeas is available, Justice Souter's
23 exception to *Heck* does not apply and the Court will address the question raised by
24 Beckway's second argument: whether his allegation that excessive force occurred *following*
25 his arrest removes this claim from the scope of *Heck*.
26 //
27 //
28 //

4

### I. Is Beckway currently "in custody" for habeas purposes?

Justice Souter concurred in *Heck* out of concern that the Court's majority opinion could be interpreted to "needlessly place at risk the rights of those . . . not 'in custody' for habeas purposes." *Heck*, 512 U.S. at 500. Since "individuals not 'in custody' cannot invoke federal habeas jurisdiction," a requirement that they "show the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment" would "deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling." *Id.* He therefore concluded – with the agreement of four other justices – that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Spencer*, 523 U.S. at 21 (Souter, J., concurring).

Justice Souter's concurrences carve out an exception to the *Heck* bar for those *not* in custody because habeas relief is available only to those who are. The key question on Defendants' instant motion is what qualifies as "in custody." The federal habeas statute provides that a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). The Supreme Court's "interpretation of the 'in custody' language has not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus." *Maleng v. Cook*, 490 U.S. 488, 491 (1989). Under California law, a writ of habeas corpus may be prosecuted by "[e]very person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, . . . to inquire into the cause of such imprisonment or restraint." Cal. Pen. Code § 1473(a). The writ is available not only to those who are "physically imprisoned," but also to individuals "in constructive custody" like those on parole, probation, or bail. *In re Wessley W.*, 125 Cal. App. 3d 240, 246 (1981). As Justice Souter himself explained, among individuals not "in custody" are "people who were merely fined, for example, or who have completed short

5

1  terms of imprisonment, probation, or parole, or who discover (through no fault of their own)
2  a constitutional violation after full expiration of their sentences." *Heck*, 512 U.S. at 500.

3  Beckway was sentenced to one year of summary probation on October 27, 2009, a
4  sentence that will presumptively end on the same date in 2010. "Summary probation" is
5  formally referred to as a "conditional sentence" in the California Penal Code, and is defined
6  as "the suspension of the imposition or execution of a sentence and the order of revocable
7  release in the community subject to conditions established by the court without the
8  supervision of a probation officer." Cal. Pen. Code § 1203(a); *see also People v. Bishop*, 11
9  Cal. App. 4th 1125, 1131-32 (1992) (describing 1981 and 1982 amendments to the Penal
10 Code introducing "conditional sentence" and clarifying "that what was formerly referred to
11 as 'summary probation' or 'court probation' was henceforth to be known as 'conditional
12 sentence'"). The conditions for Beckway's release were to "obey all laws, commit no same
13 or similar offenses and . . . pay a fine in the amount of $160," Preston Decl. (Doc. 72), Ex. F
14 at 6:9-15, as well as to "[n]otify the Court of any changes in mailing address, physical
15 address or telephone number," and to "[f]ollow all orders of the Court," *id.*, Ex. G at 3.

16 An individual on probation can generally petition for a writ of habeas corpus under
17 both state and federal law.[3] *See Jones v. Cunningham*, 371 U.S. 236 (1963) (ruling that "a
18 state prisoner who has been placed on parole is 'in custody'" for habeas purposes); *Arketa v.
19 Wilson*, 373 F.2d 582, 583 (9th Cir. 1967) (applying *Jones*'s holding to individuals on
20 probation, observing that "[i]n California, a convict who is on probation is as much in
21 custody as one who is on parole; he remains subject to the control of the probation officer
22 and the court"); *In re Wessley W.*, 125 Cal. App. 3d 240, 246 (1981) ("Today, the writ is
23 available to one on . . . probation[.]"). In *Jones*, the Supreme Court observed that the writ of
24 habeas corpus "never has been a static, narrow, formalistic remedy," but rather is one whose

---

[3] Although Justice Souter's concurrence was concerned with avoiding the denial of "any *federal* forum for claiming a deprivation of federal rights," *Heck*, 512 U.S. at 500 (emphasis added), a party is required to exhaust state remedies before pursuing habeas relief in federal court. *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982). For that reason, the Court addresses the "in custody" requirement for habeas corpus on the federal and state levels.

6

"scope has grown to achieve its grand purpose – the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Jones*, 371 U.S. at 243. With that in mind, the Court concluded that the conditions of the petitioner's parole, which "confine[d] and restrain[ed] his freedom," were "enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute." *Id.* The Court "reasoned that the petitioner's release from physical confinement under the sentence in question was not unconditional; instead, it was explicitly conditioned on his reporting regularly to his parole officer, remaining in a particular community, residence, and job, and refraining from certain activities." *Maleng*, 490 U.S. at 491 (discussing *Jones*).

*Jones* was the first in a line of Supreme Court decisions expanding the scope of habeas corpus beyond challenges to the convictions of "prisoners actually in the physical custody of the State." *Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502, 508 (1982). In *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968), the Court concluded that a habeas petitioner's unconditional release during his action's pendency did not moot a claim that was filed when he was in physical custody, because he still faced the "collateral consequences" of his conviction. The Court later found that a defendant who had been released on his own recognizance post-sentencing but pre-incarceration was "in custody" for habeas purposes, because he was "subject to restraints 'not shared by the public generally.'" *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973) (citing *Jones*, 371 U.S. at 240). Those decisions "have limited the writ's availability to challenges to state-court judgments in situations where – as a result of a state-court criminal conviction – a petitioner has suffered substantial restraints not shared by the public generally." *Lehman*, 458 U.S. at 510. The question before this Court, then, is whether Beckway's summary probation subjects him to "substantial restraints not shared by the public generally."

The parties have cited no cases addressing whether summary probation under California law is a sufficient restraint on liberty to qualify as custody for habeas corpus purposes. An individual sentenced to summary probation is "subject to conditions established by the court." Cal. Pen. Code § 1203(a). Summary probation falls within section

7

1203.2 of the California Penal Code, which dictates the procedures to be followed when a condition of probation is violated:

> At any time during the probationary period of a person released on probation under the care of a probation officer pursuant to this chapter, or of *a person released on conditional sentence or summary probation not under the care of a probation officer*, if any probation officer or peace officer has probable cause to believe that the probationer is violating any term or condition of his or her probation or conditional sentence, the officer may, without warrant or other process and at any time until the final disposition of the case, rearrest the person and bring him or her before the court or the court may, in its discretion, issue a warrant for his or her rearrest. Upon such rearrest, or upon the issuance of a warrant for rearrest the court may revoke and terminate such probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses.

Cal. Pen. Code § 1203.2(a) (emphasis added). In characterizing an earlier version of section 1203.2, the Ninth Circuit observed that "a prisoner released on probation may at any time be rearrested without warrant, brought before the court, and have his probation revoked and terminated upon the mere report of the probation officer." *Benson v. California*, 328 F.2d 159, 162 (9th Cir. 1964). An individual on summary probation faces those same constraints.

On the surface, the conditions imposed on Beckway appear no different than those imposed on the general public: to "obey all laws" and "commit no same or similar offenses."[4] For that reason, Beckway argues that his summary probation is not analogous to the cases that concluded one on probation or parole is "in custody." He is not required to report to a probation officer or submit to government supervision, and he does not have a suspended sentence that could lead to incarceration if he violates a condition of probation. His circumstances bear little resemblance to the conditions in *Jones* that prompted the Supreme Court to conclude that parole satisfies the "in custody" requirement.

---

[4] Although Beckway was also fined, a fine does not trigger habeas jurisdiction. *See Dreman v. Francis*, 828 F.2d 6, 7 (9th Cir. 1987).

8

The Court agrees that *summary* probation is distinct from probation, and that the restraint on Beckway's liberty is substantially less than that faced by an individual on probation. However, the Supreme Court addressed the significance of such seemingly innocuous conditions in a footnote to *Jones*: "Even the condition which requires petitioner not to violate any penal laws or ordinances, at first blush innocuous, is a significant restraint because it is the Parole Board members or the parole officer who will determine whether such a violation has occurred." *Jones*, 371 U.S. at 242 n.19. Thus an individual on parole could "be thrown back in jail to finish serving the allegedly invalid sentence with few, if any, of the procedural safeguards that normally must be and are provided to those charged with crime." *Id.* at 242. The possibility of a parole officer deciding whether a violation has occurred by itself constitutes, according to the Supreme Court, a "significant restraint" on liberty.

Section 1203.2 puts Beckway in an analogous condition. "[I]f any probation officer . . . has probable cause to believe that the probationer is violating any term or condition of his or her . . . conditional sentence, the officer may, without warrant or other process . . . , rearrest the person and bring him or her before the court[.]" Cal. Pen. Code § 1203.2. Although the requirement that the probationer be brought "before the court" demonstrates the retention of some procedural protections, a probation officer is still entitled to make an arrest "without warrant or other process." Probation can be revoked by the court if it "has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, *regardless whether he or she has been prosecuted for such offenses*." *Id.* (emphasis added). The loss of procedural safeguards can be a sufficient basis to conclude that an individual is "in custody" for habeas purposes. *See Jones*, 371 U.S. at 242 n.19. Since Beckway loses some procedural protection by operation of section 1203.2 while he is on summary probation, the Court concludes that he is "in custody" for habeas purposes. Justice Souter's exception to *Heck* is therefore

9

inapplicable; the Court reverses its prior conclusion to the contrary. Defendants' motions for reconsideration are GRANTED IN PART as to this issue.

## II.     Does Beckway's claim imply the invalidity of his conviction?

Beckway reasserts a second basis for determining that *Heck* does not bar his § 1983 claim, which the Court concluded it did not need to address in its original order. Beckway's excessive force claim would not imply the invalidity of his conviction for resisting arrest, according to Beckway, because he alleges that the excessive force occurred only after his arrest was effected. As this theory would remove Beckway's excessive force claim from the scope of *Heck*, the Court agrees that it must now be addressed.

Defendants contend that Beckway's claim is barred by *Heck* because one can only be convicted of resisting an arrest that is lawful, *see People v. Wilkins*, 14 Cal. App. 4th 761, 776 (1993), but an officer "is not permitted to use unreasonable or excessive force in making an otherwise lawful arrest," *People v. Olguin*, 119 Cal. App. 3d 39, 46 (1981). The allegation that the officers used excessive force therefore implies the invalidity of his conviction for resisting a lawful arrest under section 148 of the California Penal Code.[5] Although Beckway does not dispute that an excessive force claim *can* be inconsistent with a resisting arrest conviction, he argues that there is no such inconsistency here. As alleged in his complaint, one of the two deputies stomped on his leg and fractured his knee only after his "face and abdomen were on the ground" and the other deputy was holding Beckway's "hands behind his back." Complaint (Doc. 1) ¶ 15. At that point, Beckway argues, his arrest had already been effected and he was no longer offering resistance. The excessive force therefore occurred after the events underlying his conviction for resisting arrest, and his claim does not imply the invalidity of that conviction.

Beckway's argument relies on the Ninth Circuit's decision in *Smith v. City of Hemet*. 394 F.3d 689 (9th Cir. 2005). The plaintiff in *Smith* pled guilty to a section 148(a)(1)

---

[5] Section 148 makes it a misdemeanor to "willfully resist[], delay[], or obstruct[] any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment." Cal. Pen. Code § 148(a)(1).

10

violation, after repeatedly defying the orders of police officers who had been called to his home in response to a domestic violence complaint. Each act of defiance – including refusing to remove his hands from his pockets, refusing to step off his porch, and refusing to put his hands on his head – occurred as the police officers were lawfully investigating the complaint, and each by itself "could support a conviction under [section 148] for obstructing the criminal investigation." *Id.* at 697. Smith continued to defy section 148 by resisting the officers when they came onto his porch to arrest him, at which time they deployed pepper spray and sicced the police canine on him. Although the defendants cited *Heck* to bar Smith's § 1983 excessive force claim, the court recognized that the applicability of *Heck* depended on the factual basis for Smith's guilty plea. If he pled guilty "based on his behavior *after* the officers came onto the porch, during the course of the arrest, his suit would be barred by *Heck*," because "a successful § 1983 action" would mean the officers had used excessive force to arrest him, which would demonstrate the invalidity of his section 148 conviction. *Id.* at 697-98 (emphasis in original). If, however, his plea was based on his behavior while standing "alone and untouched on his porch," then the alleged excessive force "occurred *subsequent* to the conduct on which his conviction was based" and his § 1983 action would not conflict with his conviction. *Id.* at 698 (emphasis in original). Since the basis for the plea was unknown, the Ninth Circuit held that Smith's § 1983 action was "not barred by *Heck* because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction." *Id.* at 693. As a result, the "§ 1983 action neither demonstrate[d] nor necessarily implie[d] the invalidity" of Smith's conviction. *Id.*

The Ninth Circuit reached a similar conclusion four years earlier in *Sanford v. Motts*, when it allowed the plaintiff, Regina Sanford, to bring an excessive force claim alleging that an officer had punched her in the face after she was already handcuffed. 258 F.3d 1117 (9th Cir. 2001). Sanford pled nolo contendere to a section 148(a)(1) charge after she and her boyfriend had intervened with a police officer who was attempting to arrest her boyfriend's brother. In her § 1983 claim, she alleged that excessive force was used after her arrest. The

11

1   court concluded that "*Heck* is no bar":  if the officer "used excessive force subsequent to the
2   time Sanford interfered with his duty, success in her section 1983 claim will not invalidate
3   her conviction." *Id.* at 1120.   As excessive force "used after an arrest is made does not
4   destroy the lawfulness of the arrest," Sanford's case hinged on her ability to "prove the
5   punch was delivered after she was arrested." *Id.*

6         Likewise, in *Smithart v. Towery,* 79 F.3d 951 (9th Cir. 1996), the Ninth Circuit
7   confronted the applicability of *Heck* to a plaintiff who had pled guilty to assault with a
8   deadly weapon for driving a truck at two officers.   Although *Heck* barred him from
9   challenging the probable cause for his arrest, it did not bar his claim that the officers used
10  excessive force after he had exited the vehicle, as his conviction was based on his conduct in
11  the truck.  *Id.* at 952.  "To the extent that Smithart seeks to recover for defendants' alleged
12  use of excessive force during the course of his arrest, his section 1983 action may proceed,"
13  the court concluded.  *Id.* at 953.

14        To distinguish the present facts from these and similar cases cited by Beckway,
15  Defendants argue that, in Beckway's case, "there was a single act of resistance that coincided
16  with the arrest upon which Beckway's plea was entered."  Defs.' Reply in Support of Motion
17  for J. on the Pleadings (Doc. 85) at 6 n.9.  As a result, Defendants assert, there can be no
18  dispute over the factual basis for Beckway's plea: only one act of resistance would subject
19  Beckway to the section 148 charge, and the officers' alleged use of excessive force at that
20  time would be inconsistent with his conviction.  As described in the police reports and in
21  Beckway's own complaint, Beckway's altercation with the officers appears to have been
22  brief and rapid:

> DeShong . . . contacted Beckway at his home while accompanied by Ward as a cover unit.  He found Beckway to be visibly intoxicated and unsteady on his feet.  After soliciting Beckway's account of his altercation with Keats, DeShong notified Beckway that he was placing him under arrest.  Beckway "pulled away" and "started to spin around, attempting to gain physical advantage," but then "lost his balance and fell to the deck of the residence."  Preston Decl., Ex. A at 3.  Beckway, having fallen forward, had his hands and arms beneath his torso; the officers attempted to gain control of his hands and soon placed him in handcuffs.  As the officers helped him up, Beckway complained

12

> of a pain to his left leg, and was transported by medical personnel
> to a hospital for treatment. Beckway alleges in his complaint that
> the officers had forcibly thrown him to the ground and stomped
> on the back of his left knee, causing his injury.

May 12, 2010 Order at 2-3. In *Smith*, the Ninth Circuit found multiple potential bases for the plaintiff's guilty plea because he had engaged in numerous, discrete acts of defying officer commands. Beckway attempts to do the same here, arguing that he engaged in distinct acts – his initial delay upon being told of his arrest, for example, and his pulling away from DeShong's grip – each of which could have formed the basis of his plea. Defendants argue that such a breakdown of his arrest is infeasible, because the arrest was a fluid, uninterrupted act that could be measured in seconds. Defendants urge the Court to follow instead the Ninth Circuit's decision in *Cunningham v. Gates*, which found the *Heck* bar applied because "there was no break between [the plaintiff's] provocative act" and "the police response that he claims was excessive." 312 F.3d 1148, 1155 (9th Cir. 2002).

*Smith* forces the Court to examine the temporal relationship between the acts underlying a conviction and the acts underlying the § 1983 claim. If "the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction," the *Heck* bar does not apply. *Smith*, 394 F.3d at 693. Thus, a claim that the officers used excessive force *after* Beckway had already submitted to their authority would not be subject to *Heck*. That is precisely what Beckway alleges: he claims one of the deputies stomped on his leg *after* his arrest was already effected, when he was on the ground and in the grasp of one deputy. Even if the arrest itself was fluid, any excessive force that occurred after the arrest had been effected would fall beyond the scope of *Heck*.

On a motion for judgment on the pleadings, the Court construes all doubts in favor of the plaintiff. The Court must therefore credit Beckway's allegations as true, and as such cannot conclude at this time that the excessive force claim is barred by *Heck*. To the extent that Beckway alleges the use of excessive force following his arrest, his § 1983 claim does not necessarily imply the invalidity his conviction for resisting arrest. As in *Sanford v.*

13

*Motts*, Beckway's case hinges on his ability to prove the kick "was delivered after []he was arrested." 258 F.3d at 1120.  Defendants' motions for reconsideration are therefore DENIED IN PART as to their requests that the Court dismiss Beckway's § 1983 claim for excessive force and the related state law claims for battery, negligence, and intentional infliction of emotional distress.

**CONCLUSION**

For the reasons set forth above, Defendants' motions are GRANTED IN PART and DENIED IN PART.  The Court concludes that Beckway is currently in custody for habeas purposes, and that the exception to *Heck* carved out by Justice Souter does not apply here.  The motions are therefore GRANTED IN PART as to this issue.  However, the Court also finds that *Heck* does not bar Beckway's claim that excessive force was used after his arrest.  Judgment on the pleadings is therefore DENIED IN PART as to Beckway's § 1983 claim and the related state law claims for battery, negligence, and intentional infliction of emotional distress.

**IT IS SO ORDERED.**

Dated: 7/28/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT